Scott R. Mosko (State Bar No. 106070)
scott.mosko@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California  94304-1203
Telephone:   (650) 849-6600
Facsimile:   (650) 849-6666

Attorneys for Plaintiff
YAHOO! INC.

(Other Counsel listed on Signature Page)

**ORIGINAL FILED**

JUL 3 1 2009

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

E-filing

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

YAHOO! INC.,

                    Plaintiff,

          v.

ASHANTIPLC LIMITED, ALIZA SARID,
and KISHOE BHAVNANIE,

                    Defendants.

Case No.   **C09  03528  MEJ**

**COMPLAINT FOR
CYBERSQUATTING, TRADEMARK
INFRINGEMENT, FALSE
DESIGNATION OF ORIGIN,
DILUTION, AND UNFAIR
COMPETITION**

**DEMAND FOR JURY TRIAL**

Plaintiff Yahoo! Inc. ("Plaintiff" or "Yahoo!") brings this action against Defendants Ashantiplc Limited ("Ashanti"), Aliza Sarid, and Kishoe Bhavnanie (collectively, "Defendants"). Plaintiff alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1.      This is an action for cybersquatting under 15 U.S.C. § 1125(d), trademark infringement under 15 U.S.C. § 1114(1), trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), trademark dilution under

1  California Business & Professions Code § 14247, unfair competition under California Business &

2  Professions Code § 17200 *et seq.*, and common law trademark infringement and unfair competition.

3      2.    Yahoo! brings this action seeking equitable and monetary relief from Defendants'

4  willful violation of Yahoo!'s rights in its famous FLICKR trademark with the bad-faith intent to

5  profit from that mark. Defendants' registration and use of the confusingly similar FLICKER.COM

6  domain name for a website displaying photography-related ads constitutes cybersquatting, infringes

7  Yahoo!'s established rights in its FLICKR mark, dilutes the distinctiveness of that famous mark, and

8  constitutes unfair competition under federal, state, and/or common law.

9  **PARTIES**

10      3.    Plaintiff Yahoo! is a Delaware corporation headquartered in this District.

11      4.    Defendant Ashanti is a Hong Kong corporation having its place of business at

12  Shanghai Industrial Investment Building, Room 1204 12/F, Hong Kong.

13      5.    Defendant Aliza Sarid is an individual residing in Florida, and a managing agent of

14  Defendant Ashanti. Mr. Sarid does business under the name Sahar Sarid.

15      6.    Defendant Kishoe Bhavnanie is an individual residing in Florida, and a managing

16  agent of Defendant Ashanti. Mr. Bhavanie does business under the name Jeff Bhavnanie.

17  **JURISDICTION AND VENUE**

18      7.    This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C.

19  § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). Because Plaintiff is a Delaware corporation with a

20  principal place of business in California, Ashanti is a Hong Kong corporation with a place of

21  business in Hong Kong, Sarid and Bhavnanie are individuals residing in Florida, and the matter in

22  controversy exceeds $75,000, exclusive of interest and costs, this Court also has diversity

23  jurisdiction under 28 U.S.C. § 1332. This Court has supplemental jurisdiction over Plaintiff's state

24  law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to its federal claims that

25  they form part of the same case or controversy and derive from a common nucleus of operative facts.

26      8.    This Court has personal jurisdiction over the Defendants and venue is proper in the

27  Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c). Defendants transact

28  business in this District, and operate a number of Internet-related businesses with customers in this

COMPLAINT

1   District.  In addition, Plaintiff's claims arise in this District, and a substantial portion of the activity

2   about which Plaintiff complains has taken place in this District.  The FLICKER.COM domain name

3   at issue in this case connects to a website that is accessible to users in this District, and Defendants

4   have solicited advertisers from this District for that website.  Also, because Plaintiff resides in this

5   District, the damages and injury suffered by Plaintiff were and are suffered, in substantial part, in

6   this District.

7                                    **INTRADISTRICT ASSIGNMENT**

8          9.      The San Jose Division of the Northern District of California is the appropriate division

9   because a substantial part of the events giving rise to Plaintiff's claims occurred in Santa Clara

10  county, where Plaintiff's principal place of business is located.

11                          **YAHOO! AND ITS PRODUCTS AND SERVICES**

12         10.     Yahoo! is a leading global Internet brand and communications, commerce, and media

13  company that offers a comprehensive branded network of searching, directory, information,

14  communication, shopping, electronic commerce, and other online services to millions of Internet

15  users daily.  Yahoo! is focused on powering its communities of users, advertisers, publishers, and

16  developers by creating indispensable experiences built on trust.  Yahoo!'s main YAHOO! website in

17  the U.S. is located at the domain name YAHOO.COM and URL http://www.yahoo.com, and is one

18  of the most trafficked Internet destinations worldwide.

19         11.     Many of Yahoo!'s online products and services are offered to the public free of

20  charge, and others are offered for subscription and/or service fees.  Yahoo! also receives revenues

21  from an array of transactions originating from its websites, and derives income from the sale of

22  advertising and co-branding or sponsorship agreements with other companies.  Yahoo!'s range of

23  marketing services make it easier  and more effective for advertisers and marketers to reach and

24  connect with Internet users.  Yahoo! serves advertisements for thousands of companies each year,

25  and its advertising clients have included a majority of the "Fortune 100" largest advertisers.

26         12.     Yahoo! operates many websites in addition to its YAHOO.COM website.  Yahoo!'s

27  FLICKR website located at the domain name FLICKR.COM is one of the world's leading online

28  digital-content management and sharing services.  Since its inception in 2004, the FLICKR website

- 3 -                                           COMPLAINT

1   and community has revolutionized the sharing and discovery of what people see and experience

2   through digital images, the vast majority of which are photographs but also including videos and

3   artwork. The FLICKR website allows users to upload, store, explore, find, manage, edit, and share

4   digital images with friends, family, and the world. Representative printouts from the FLICKR

5   website are attached as Exhibit 1.

6        13.   The FLICKR website offers basic accounts for free, and accounts with larger storage

7   for a subscription fee. Free FLICKR accounts include a monthly photo upload limit of 100

8   Megabytes (MB) and 2 video uploads per month (90 seconds max, 150MB per video). Subscription

9   FLICKR accounts include unlimited photo and video uploads, the ability to show high-definition

10  videos, unlimited storage, and archiving of high-resolution original images.

11       14.   FLICKR members can upload photos and videos from computers, via e-mail, or via

12  camera phone. Those images can then be searched by users (members and non-members) by

13  photographer, tag, time, text, group, or geographic location. Members can control who views and/or

14  shares their digital content by applying certain settings, including privacy levels, which determine

15  who can view the images; usage licenses, for the protection copyrighted works; content type, to flag

16  documents as photos, videos, artwork, illustrations, or screen shots; and safety levels, so members

17  can see only images within their specified comfort zones.

18       15.   The FLICKR website also offers a host of photo and video management services.

19  Members can create sets (groupings of photos and videos organized around the user's theme such as

20  trips or pets) and collections (groupings of sets organized under a larger theme, such as travels or

21  years). Members can also "tag" their photos and videos with up to 75 tags, which are similar to

22  keywords or category labels that allow the image to be further organized and easily found by other

23  users and members.

24       16.   FLICKR members can create public or private groups and join other members' groups

25  to share photos and videos, and exchange comments and information via a discussion board. For

26  example, FLICKR groups allow members who attended the same event (such as a trip, wedding, or

27  reunion) to share their photos and videos of the event in one location. Sharing is at the heart of the

28  / / /

COMPLAINT

FLICKR website, which has more than 30,000,000 registered members, and stores and displays hundreds of millions of photographs and videos.

17.     The FLICKR website also offers a variety of communication and social networking services.   FLICKR members can create contacts and e-mail subscriptions to share and receive updates from family and friends.   Contacts can leave messages directly on members' photos and videos during "mouseovers," and comments below the image.   Members can also create guest passes to share photographs and videos with people who do not have FLICKR accounts.   The FLICKR website even offers a number of data feeds, including customizable feeds, which allow contacts to receive updates about the FLICKR accounts of their friends and family.

18.     In addition to the above services, Yahoo! has partnered with a number of companies to offer FLICKR members the ability to create a wide array of products from photographs and videos, and to grant permission to other members to create such products.   These products include but are not limited to prints, including prints available for pick-up at Target stores, slideshow DVDs, postage stamps, photo books, framed prints, posters, calendars, cards and stationary, holiday cards, and personalized credit cards.

19.     The FLICKR website offers extensive information on the cameras used for the photos and videos posted in the FLICKR website, and offers a "camera finder" feature.   Among other things, this feature displays graphs of the number of FLICKR members who have uploaded images with a particular type of camera on a given day, lists the types of cameras used by FLICKR members to capture the images uploaded on the FLICKR website, provides FLICKR member reviews of their cameras, and shows examples of photographs taken with different types of cameras and uploaded to the FLICKR website.

20.     The FLICKR website also displays advertisements from Yahoo!'s advertising network, including sponsored-link advertisements and banner advertisements.   A significant percentage of the revenues derived from the FLICKR website relate to these advertisements.   Many of these advertisements relate to photography and digital content-related products and services.   For example, advertisements for Adorama Camera, Ritz Camera, and B&H Photo have been served to and have appeared on the FLICKR website.

COMPLAINT

21.    The FLICKR website has been enormously popular for many years.  For example, the FLICKR website had more than 923,000 unique visitors and 14,000,000 page views in May 2005; more than 8,440,000 unique visitors and 443,000,000 page views in May 2007; more than 53,950,000 unqiue visitors and 1,140,000,000 page views in May 2008; and more than 84,130,000 unique visitors and 1,860,000,000 page views in May 2009.

22.    Alexa, which is a popular third-party traffic-ranking website, currently ranks the FLICKR website as number 18 of the top 100 sites on the Internet in the U.S.  Printouts from Alexa's website providing these rankings are attached as Exhibit 2.

23.    Yahoo! has extensively promoted its FLICKR services and FLICKR.COM website in the U.S.  The FLICKR website has also received notoriety and media recognition since its inception.  Numerous media outlets have published stories about the FLICKR website over the years including, for example, *The New York Times*, *Forbes*, *The Washington Post*, *The Boston Globe*, *Chicago Sun-Times*, and *The Los Angeles Times*, among many others.  Thousands of news article or wires have mentioned the FLICKR website since March 2004.  There have also been numerous stories where the FLICKR website was mentioned in the headlines or title of the article or wire, including in prominent nationwide publications such as *USA Today, Business Week, PC World*, and *Mac World*.

24.    In or around March 2005, in addition to the usual publicity surrounding the FLICKR website and business, numerous media outlets reported the acquisition of the FLICKR business by Yahoo!.   For example, news regarding the acquisition appeared in reports on television, in publications, and/or online by media outlets in the U.S.  These media outlets included *South Florida Sun Sentinel, St. Petersburg Times, The Herald-Tribune, The Miami Herald* (publications circulated in Florida where Defendants Sarid and Bhavnanie reside and work), as well as other prominent media outlets such as *Newsweek*, and news reporting services such as the *Business Wire* and *AP Online*. These media outlets collectively reached tens of millions (if not hundreds of millions) of people in the U.S.

25.    The FLICKR website has also received many awards and accolades.  For example, in 2005, the FLICKR website received the Webby "Breakout of the Year" Special Achievement Award, the Bloggies "Best Meme" award, and was included in the *Time Magazine* list of "50 coolest

COMPLAINT

websites."   In subsequent years, the FLICKR website won additional awards, including many Webby Awards such as "Best Navigation/Structure" (2006); "Best Practices" (2006, 2007, 2008); "Best Visual Design" and "People's Voice" (2007, 2008); and "Community" (2008).

26.     By virtue of the distinctive nature and thus inherent strength of the FLICKR mark as applied to Yahoo!'s services and products; the many millions of visitors to the FLICKR website every day; the many millions of links to the FLICKR site from third-party websites; and Yahoo!'s extensive use and registration of its FLICKR mark, the FLICKR mark has been famous for years.

## YAHOO!'S FLICKR TRADEMARK AND FLICKR.COM DOMAIN NAME

27.     Yahoo!, through itself and its predecessor-in-interest, has used the distinctive FLICKR mark and name in commerce in the U.S. in connection with its products and services, including but not limited to computer software, and photography, communication, and electronic storage and management services since at least as early as February 2004.

28.     Yahoo! owns strong common-law trademark rights in the FLICKR trademark.   The FLICKR mark is suggestive and thus inherently distinctive because it suggests, rather than merely describes, a characteristic of the FLICKR products and services.   Further, as a result of Yahoo! and its predecessor's longstanding use of the FLICKR mark, widespread advertising, publicity, and promotion of that mark, and the FLICKR businesses' commercial success, the FLICKR mark has been commercially strong and famous for many years.

29.     In addition to its common-law rights, Yahoo! owns the following federal trademark registration for the FLICKR mark in the U.S.:

| MARK | REG. NO. / REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|---|---|---|---|---|
| FLICKR | 3455275<br><br>6/24/2008 | 5/10/2005 | 2/28/2004 | Computer software for use in database management; computer software for uploading, manipulating, and enhancing digital content, documents, photographs, images, video, and audio; computer software for linking metadata tags with photographic and other media files to enable search engine retrieval and database software collections of files and their on-line sharing, and for linking metadata tags with web pages visited, to create links which users can maintain for themselves and share with on-line groups and website tagging in Class 9 |

COMPLAINT

| MARK | REG. NO./ REG. DATE | FILING DATE | FIRST USE DATES | PRODUCTS/SERVICES |
|------|---------------------|-------------|-----------------|-------------------|
| | | | 2/28/2004 | Communication services by electronic computer terminals and cell phones; telecommunication services by e-mail electronic mail services; electronic transmission of messages, images, and via computer terminals and cell phones; providing online forums for discussion and electronic bulletin/message boards for transmission of messages among users in the field of general interest; providing on-line electronic bulletin boards for transmission of messages among computer users concerning personal photographs in Class 38 |
| | | | 2/28/2004 | Electronic storage of digital content including text, photographs, images, video, and audio, in Class 39 |
| | | | 12/5/2007 | Digital enhancement of photographs; alteration and/or retouching of photographic images, in Class 40 |
| | | | 2/28/2004 | Online journals, namely, blogs concerning topics of general interest to the blogger; photography services; providing information in the field of photography, in Class 41 |

A copy of this registration is attached as Exhibit 3.

30.    The existence of this valid and subsisting federal trademark registration is prima facie evidence of Yahoo!'s ownership and the validity of the FLICKR trademark.

31.    Yahoo! also owns the domain name FLICKR.COM, which was registered in November 2003 and which has been used for the FLICKR website since at least as early as February 2004.

## DEFENDANTS' UNLAWFUL ACTIVITIES

32.    For many years, Defendants have been in the business of registering, buying, and selling domain names for profit.  Defendant Sarid is a self-proclaimed domain name expert, and maintains a blog devoted to domain-name related issues at the domain name CONCEPTUALIST.COM.  Printouts from Sarid's blog are attached as Exhibit 4.  Defendant Bhavnanie also has significant experience and knowledge about domain names.

33.    Defendants Sarid and Bhavnanie have co-founded a number of Internet-related businesses over the years.  Sarid and Bhavnanie founded Defendant Ashanti at least as early as 2003. In connection with that business, Sarid and Bhavnanie purchased a number of domain names with

- 8 -                                                          COMPLAINT

1   the intent to use and sell them for profit.  Ashanti was initially listed on WHOIS records as the

2   registrant (owner) for many of these domain names.  The domain names were registered through the

3   domain-name registrar GoDaddy.com.

4        34.   In July 2006, Defendants purchased the FLICKER.COM domain name in an eBay

5   auction from E.K. Kern of Royersford, Pennsylvania.  Defendants paid approximately $55,000 for

6   the FLICKER.COM domain name, and registered it shortly thereafter under the registrant name

7   Ashanti through GoDaddy.com.  Based on the extensive publicity surrounding the FLICKR business

8   and its enormous commercial success prior to the sale, Defendants knew when they registered the

9   FLICKER.COM domain name that it was a confusingly similar variation of Yahoo!'s famous

10  FLICKR trademark and name.

11       35.   In addition, Defendants had knowledge in July 2006 of Yahoo!'s FLICKR mark and

12  name from the content of the website accessible at FLICKER.COM (which content had been created

13  by the domain name's former owner E.K. Kern).  The website displayed a notice referring to

14  Yahoo!'s FLICKR website by indicating, "This is not the FLICKR photo sharing site, which is

15  spelled differently."  This notice was displayed immediately before Defendants purchased the

16  FLICKER.COM domain name.  Printouts showing this notice are attached as Exhibit 5.

17       36.   Further, because Defendants were domain-name experts and had years of experience

18  in the domain-name industry, their willingness to pay $55,000 for the FLICKER.COM domain name

19  shows that Defendants registered the FLICKER.COM domain name opportunistically, with the bad-

20  faith intent to capitalize on Yahoo!'s goodwill in its FLICKR trademark and name, including but not

21  limited to by selling the FLICKR.COM domain name to Yahoo! or a third party for profit and/or by

22  generating revenues from advertisers in connection with the FLICKER.COM domain name.

23       37.   In or around 2006, Defendants moved their domain names, including the

24  FLICKER.COM domain name, from GoDaddy.com to the registrar Moniker.  Defendants also

25  purchased Moniker's private registration service, which shielded the identity and contact information

26  for the registrant from the public on WHOIS records.  Specifically, Ashanti's name and contact

27  information was replaced with Moniker's name and contact information so that the public would not

28  be able to tell who owned the domain names.

COMPLAINT

38. At least as early as 2007, Defendants began using the FLICKER.COM domain name for a website offering the domain name for sale. The FLICKER.COM website listed offers ranging from $10,000 to $90,000 that Defendants had received and rejected. In August 2007, in an effort to promote the sale of the FLICKER.COM domain name, Defendants displayed traffic statistics on the website, which ranged from 146,108 unique visitors in October 2006 to 210,000 unique visitors in January 2007.

39. In or around 2008, Defendants again moved their domain names, including the FLICKER.COM domain name, this time from Moniker to Backslap Domains. Defendants purchased Backslap's private registration service to shield the identity and contact information of the owner from the public on WHOIS records.

40. In June 2009, Yahoo! learned that Defendants were displaying photography-related advertisements on the FLICKER.COM website for Adorama Camera, Ritz Camera, and B&H Photo. These advertisements included descriptions of the photography-related products and services offered by these companies (which were identical, similar, and/or closely related to Yahoo!'s FLICKR products and services), links to the advertiser's websites, and six additional links for each company, which described a particular page of their websites (e.g., Professional Cameras & Lenses under Adorama Camera, Store Locator under Ritz Camera, Pro Camera & Lenses under B&H Photo). A printout of this website, a screen shot of this website, and a printout of the source code for this website are attached as Exhibit 6

41. Defendants' FLICKER.COM website used shortened links to these advertisers' websites provided by Bit.ly. The Bit.ly website posts information for its URLs that can be publicly accessed, including the number of times a link was clicked, the time frame for the clicks, and the geographic location of the Internet users who clicked on the Bit.ly link. Printouts from the Bit.ly website for the Bit.ly URLs used on Defendants' website, with the exception of one Bit.ly URL that was non-functional, are attached as Exhibit 7

42. As shown in Exhibit 7, the traffic to the Bit.ly links for Adorama Camera, Ritz Camera, and B&H Photo on the FLICKER.COM website began in June 2009, and the number of Internet users who clicked on the links was substantial, totaling at least 15,130. A chart summarizing

1   the number of clicks each of the advertisers received through the FLICKER.COM website and

2   trends in traffic during representative time frames is shown below.

| ADVERTISER | TIME PERIOD | CLICKS | U.S. CLICKS | TRENDS |
|---|---|---|---|---|
| B&H Photo | June 4 - 30, 2009 (26 days) | 11,724 | 3,049 | Substantial increase through June 2009 |
| Adorama | June 13 - 30, 2009 (17 days) | 3,241 | 743 | Substantial increase through June 2009 |
| Ritz Camera | June 23 - 30, 2009 (7 days) | 165 | 70 | Majority of clicks July 29 and 30, 2009 |

11       43.    Defendants' website at the domain name FLICKER.COM has also displayed traffic

12   statistics.  For example, in June 2009, the website stated it received 3.6 million unique visits per

13   year, with 95.74% visits originating via direct navigation, i.e., when Internet users type the domain

14   name into the address line of an Internet browser rather than locating the website via search engines

15   or links on third-party websites.  It further stated that the website generated 400,000 outbound clicks

16   per year.  Because there was no content on the FLICKER.COM website to which a user would seek

17   to navigate directly, these numbers show that a high percentage of the visitors to the

18   FLICKER.COM domain name were looking for Yahoo!'s FLICKR website and typed in a

19   phonetically identical misspelling of Yahoo!'s FLICKR.COM domain name.

20       44.    In addition, Defendants' website at the domain name FLICKER.COM has provided

21   financial information regarding advertising on the website.  In June 2009, for example, the website

22   stated that "CPC Keyword Values" (i.e., cost-per-click keyword values) for photography equipment

23   ranged from $2.50 to $3.00 per click, and that "Daily Value to Advertisers" ranged from $2,700 -

24   $3,300.  In other words, according to these statistics, each time a user clicked on a link on the

25   FLICKER.COM website, advertisers would pay Defendants $2.50 - 3.00.  Based on these numbers,

26   Defendants were receiving $1,000,000 to $1,200,000 per year in advertising revenues from the

27   FLICKER.COM domain name and website.

28   / / /

45.     As shown in the source code of the FLICKER.COM website, the "meta name" for the website is "Flicker is down for maintenance and we will be back shortly."  By using this text as a "meta name," it appears in the description for the website in search results when the term FLICKER.COM is searched via search engines, as shown by the printouts attached as Exhibit 8.  As a result, thousands of Internet users searching for Yahoo!'s FLICKR website have been left with the mistaken impression that the FLICKR website is down for maintenance when, in fact, it is not.

46.     For example, a FLICKR member posted a message regarding Defendants' "down for maintenance" message on the FLICKR website that shows actual confusion.  Specifically, the FLICKR member stated on the FLICKR help forum "I checked coming in to flicker.com through MSN and get a twitter message flicker is doing maintenance, ON A SUNDAY????".  The FLICKR member mistakenly believed that Yahoo! was doing maintenance on its FLICKR.COM website on a Sunday when it was actually Defendants who announced they were doing maintenance.  A printout from the FLICKR help forum is attached as Exhibit 9.

47.     In June 2009, Defendants created an account at the popular social-messaging website Twitter using the name FLICKERDOTCOM and the ID WWW.FLICKER.COM, and began posting messages on June 15, 2009 about the FLICKER.COM website.  Defendants' Twitter postings identified the FLICKER.COM website as a full-service photography-related website, promoted the photography-services advertisers on the website, and solicited additional photography-related advertisers for the website as well as other advertisers.  Defendants' Twitter postings also encouraged Twitter users to "spread the news" that the FLICKER.COM website was "down for maintenance."

48.     Defendants' Twitter postings immediately referenced photography in relation to the FLICKER.COM website.  For example, Defendants identified the FLICKER.COM website as "Your site for all your photography needs" in a Twitter post on June 16, 2009.  Additional representative samples of these posts are shown below, and website printouts of the posts are attached as Exhibit 10.

/ / /

/ / /

- 12 -

COMPLAINT

| DATE | DEFENDANTS' POSTS |
|---|---|
| June 15, 2009 | "What camera (Nikon, Canon, Olympus, etc) are you shooting with these days?"<br><br>"Flicker recommends:  B&H Photo Video, Adorama Camera, eBay. See site for details." |
| June 16, 2009 | "New photography links on site for photographers"<br><br>"Flicker likes Canon, Nikon, B&H, Adorama," "We looooooooooooooove female photographers! :)"<br><br>"Name your Labrador puppy "KodaK". It's the cheapest Kodak lab you'll ever get!" |
| June 18, 2009 | "In the process of building a Twitter app, find photography equipment easier than ever"<br><br>"Do you love photography as much as we do?" |
| June 19, 2009 | "Flicker likes B&H, ADORAMA, eBay Camera" |
| June 20, 2009 | "As we're still working on our site, please visit our friends @ B&H, ADORAMA, eBay" |
| June 26, 2009 | "Flicker loves B&H . . ."<br><br>"Flicker loves @AdoramaCamera . . ."<br><br>"Digital lenses, Canon EOS, Nikon, Digital Cameras, Professional Video, Adorama Camera, B&H Photo Video, even eBay" |
| June 28, 2009 | "FLICKER LOVES ADORAMA CAMERA, B&H PHOTO STORE. Best Canon EOS, Nikon, digital, video equipment deals online" (June 28), "Flicker loves B&H, ADORAMA, and even eBay !"<br><br>"Flicker loves B&H, ADORAMA, and even eBay !"<br><br>"FLICKER LOVES ADORAMA CAMERA, B&H PHOTO STORE. Best Canon EOS, Nikon, digital, video equipment deals online" (June 28), and "FLICKER LOVES RITZ CAMERA TOO" |

49.   Defendants   also   solicited   on   Twitter   photography-related   advertisers   for   the FLICKER.COM website with the following representative posts:

/ / /

COMPLAINT

| DATE | DEFENDANTS' POSTS |
|---|---|
| June 26, 2009 | "Own a photography store? have $$$ to spend? advertise on Flicker today www.Flicker.com to contact us"<br><br>"Own a photography store? have $$$ to spend >>?? advertise on Flicker today www.Flicker.com to contact us" |
| June 26, 2009 | "By popular request bitly stats B&H (top link) http://bit.ly/as958, to advertise on Flicker, contact us via site www.Flicker.com" |

50.     On June 25, 2009, Defendants posted information on Twitter regarding the Internet traffic to the FLICKER.COM website and promoted the pay-per-click revenue (i.e., the payments from advertisers each time a user clicks on an advertisement or pop-up ads appear on the website) received on the website with the Twitter post "Flicker by the numbers www.Flicker.com #directnavigation #domain #ppc #domains #sem #seo #flicker #camera #photography #digitalphotography." Defendants also posted "Flicker by the numbers, http://bit.ly/1awZ5F, http://bit.ly/KMviO."

51.     The first link connected to a Photobucket.com page providing Internet traffic statistics for the FLICKER.COM website indicating that it had 66,972 visits from June 20, 2009 to June 25, 2009, with an average of 11,162 visits *per day*. The second link connected to a Photobucket.com page providing Internet traffic statistics for the FLICKER.COM website indicating it had 89,101 visits with 95.62% of those visits originating from direct navigation. Printouts of the Photobucket.com web pages available via Defendant's links http://bit.ly/1awZ5F and http://bit.ly/KMviO listed above are attached as Exhibit 11.

52.     As noted above, Defendants used the meta name "Flicker is down for maintenance and we will be back shortly" for the FLICKER.COM website, and the meta name appeared in the description section for the FLICKER.COM website in search results. This "down for maintenance" notice resulted in users inquiring about the status on the Twitter website. Below is a chart summarizing some of these exchanges.

/ / /

/ / /

COMPLAINT

| DATE | USER INQUIRY | DEFENDANTS' RESPONSE |
|------|--------------|---------------------|
| June 25, 2009 | "Jerry Ross: When will flicker be back up?" | "Flicker: It's in the hands of god!" |
| June 28, 2009, | "Via email: Name: Jerry Ross Email: ross@rio.com Message: When will you be back up? | FLICKER: Shortly Jerry, shortly." |
| June 27, 2009 | from ApplesSquared | "RT @ApplesSquared: Flicker is currently performing maintenance on our hosting environment. Please check back soon."<br><br>"Flicker is currently performing maintenance on our hosting environment. Please check back soon." |
| June 28, 2009 | none or unknown | "Flicker is currently performing maintenance on our hosting environment. Please check back soon." |

These comments by Twitter users are examples of actual confusion between Yahoo!'s FLICKR website and the Defendants' FLICKER.COM website.

53.    Defendants Ashanti, Sarid, and Bhavnanie each actively participated in the illegal acts described above, or otherwise caused those illegal acts to occur.

54.    Plaintiff has not authorized Defendants to register or use in any way the FLICKER.COM domain name.

**YAHOO!'S OBJECTIONS TO DEFENDANTS' UNLAWFUL ACTIVITIES**

55.    On June 27, 2009, in-house counsel for Yahoo! contacted Defendants by e-mail regarding the FLICKER.COM website.

56.    On June 29, 2009, counsel for Defendants responded to Yahoo! by e-mail, indicating that he represented Ashanti in the matter.

57.    Through counsel, Yahoo! and Defendants engaged in settlement discussions and attempted to amicably resolve the dispute, but were unable to reach an agreement.

COMPLAINT

58.     Yahoo! did not grant Defendants and/or Defendants a release from any claims, including for damages and other monetary relief, relating to the registration, use, or trafficking in the FLICKER.COM domain name or any other domain names at any time.

### HARM TO PLAINTIFF AND THE GENERAL PUBLIC

59.     Defendants' unauthorized registration and use of the FLICKER.COM domain name is likely to cause confusion, mistake, and deception as to the source or origin of the FLICKER.COM domain name, and is likely to falsely suggest a sponsorship, connection, license, or association of Defendants, and the FLICKER.COM domain name, with Plaintiff.  In fact, Defendants' actions have already caused actual confusion with Plaintiff and its services.

60.     Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, which has an inherent interest in being free from confusion, mistake, and deception.

61.     Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and Plaintiff's FLICKR mark.

62.     Defendants actions described above are likely to dilute and, if not enjoined, will continue to dilute the distinctiveness and value of Plaintiff's famous FLICKR mark.

63.     Defendants' activities have all times relevant to this action been willful and/or knowing.

### FIRST CAUSE OF ACTION

### Cybersquatting Under 15 U.S.C. § 1125(d)

64.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 63 as though fully set forth here.

65.     Defendants registered, trafficked in, and/or used the FLICKER.COM domain name with a bad-faith intent to profit from Plaintiff's FLICKR mark.

66.     Plaintiff's FLICKR mark was distinctive at the time Defendants registered, trafficked in, and used the FLICKER.COM domain name.

67.     Plaintiff's FLICKR mark was federally registered at the USPTO at the time Defendants used the FLICKER.COM domain name.

COMPLAINT

68.    Plaintiff's FLICKR mark was famous at the time Defendants registered, trafficked in, and used the FLICKER.COM domain name.

69.    The FLICKER.COM domain name is identical or confusingly similar to Plaintiff's FLICKR mark.

70.    Defendants do not have any intellectual property rights or any other rights in the FLICKER.COM domain name.

71.    The FLICKER.COM domain name does not consist of the legal name of any of the Defendants, or a name that is otherwise commonly used to identify any of the Defendants.

72.    Defendants have not made any prior use of the FLICKER.COM domain name in connection with the *bona fide* offering of any goods or services.

73.    Defendants have not made any *bona fide* fair use of the FLICKR mark on its website accessible at the FLICKER.COM domain name.

74.    Defendants registered and used the FLICKER.COM domain names to divert customers to the website accessible at the FLICKER.COM domain name from Plaintiff's FLICKR website for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website.

75.    Defendants offered to sell the FLICKER.COM domain name for financial gain.

76.    Defendants are or were the registrant or the registrant's authorized licensee or user of the Infringing Domain Name.

77.    Defendants' activities described above have at all times been willful and/or knowing.

78.    As a direct and proximate result of actions of Defendants described above, Plaintiff has been damaged and will continue to be damaged.

## SECOND CAUSE OF ACTION

### Trademark Infringement Under 15 U.S.C. § 1114(1)

79.    Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 78 of this Complaint as though fully set forth here.

80.    Without Plaintiff's consent, Defendants used in commerce reproductions, copies, and colorable imitations of Plaintiff's registered FLICKR mark in connection with the offering,

COMPLAINT

1   distribution, and advertising of goods and services, which is likely to cause confusion, or to cause

2   mistake, or to deceive, in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

3       81.     Defendants' activities described above have at all times been willful and/or knowing.

4       82.     As a direct and proximate result of actions of Defendants described above, Plaintiff

5   has been damaged and will continue to be damaged.

6                           **THIRD CAUSE OF ACTION**

7   **Trademark Infringement And False Designation Of Origin Under 15 U.S.C. § 1125(A)**

8       83.     Plaintiff realleges and incorporates by reference each of the allegations contained in

9   Paragraphs 1 through 82 of this Complaint as though fully set forth here.

10      84.     Defendants' actions, as described above, are likely to cause confusion, or to cause

11  mistake, or to deceive as to the origin, sponsorship, or approval of Defendants, their products and

12  services, and/or their commercial activities by or with Plaintiff, and thus constitute trademark

13  infringement false designation or origin, passing off, and unfair competition in violation of Section

14  43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

15      85.     Defendants' activities described above have at all times been willful and/or knowing.

16      86.     As a direct and proximate result of actions of Defendants described above, Plaintiff

17  has been damaged and will continue to be damaged.

18                          **FOURTH CAUSE OF ACTION**

19                      **Dilution Under 15 U.S.C. § 1125(C)**

20      87.     Plaintiff realleges and incorporates by reference each of the allegations contained in

21  Paragraphs 1 through 86 of this Complaint as though fully set forth here.

22      88.     The FLICKR mark is famous, as that term is used in 15 U.S.C. § 1125(c), and was

23  famous before Defendants' registration and use of the FLICKER.COM domain name in commerce,

24  based on, among other things, the inherent distinctiveness and federal registration of the FLICKR

25  mark and the extensive nationwide use, promotion, and recognition of the FLICKR mark.

26      89.     Defendants' actions, as described above, are likely to dilute the distinctive quality of

27  Plaintiff's famous and well-known FLICKR trademark in violation of Section 43(c) of the Lanham

28  Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

COMPLAINT

1    90.   Defendants' activities described above have at all times been willful and/or knowing.

2    91.   As a direct and proximate result of actions of Defendants described above, Plaintiff
3  has been damaged and will continue to be damaged.

4                              **FIFTH CAUSE OF ACTION**

5          **Dilution Under California Business & Professions Code § 14247**

6    92.   Plaintiff realleges and incorporates by reference each of the allegations contained in
7  Paragraphs 1 through 91 of this Complaint as though fully set forth herein.

8    93.   The FLICKR mark is famous, and was famous before Defendants' use of the
9  FLICKER.COM domain name in commerce, based on, among other things, the inherent
10  distinctiveness and federal registration of the FLICKR mark and the extensive nationwide use,
11  promotion, and recognition of the FLICKR mark.

12    94.   Defendants' use of the FLICKER.COM domain name is likely to cause dilution by
13  blurring and dilution by tarnishment of the FLICKR mark.

14    95.   The above-described acts of Defendants constitute trademark dilution in violation of
15  California Business & Professions Code § 14247.

16    96.   Defendants' activities described above have at all times been willful and/or knowing.

17    97.   As a direct and proximate result of actions of Defendants described above, Plaintiff
18  has been damaged and will continue to be damaged.

19                              **SIXTH CAUSE OF ACTION**

20  **Unfair Competition With Plaintiff Under California Business & Professions Code § 17200**

21    98.   Plaintiff realleges and incorporates by reference each of the allegations contained in
22  Paragraphs 1 through 97 of this Complaint as though fully set forth herein.

23    99.   Defendants have infringed Plaintiff's FLICKR mark in violation of Plaintiff's
24  proprietary rights.   Such acts constitute unfair trade practices and unfair competition under
25  California Business & Professions Code §§ 17200 *et seq.*

26    100.  Defendants' activities described above have at all times been willful and/or knowing.

27    101.  As a direct and proximate result of actions of Defendants described above, Plaintiff
28  has been damaged and will continue to be damaged.

COMPLAINT

## SEVENTH CAUSE OF ACTION

### **Common Law Trademark Infringement, Unfair Competition, Misappropriation**

102.    Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraphs 1 through 101 of this Complaint as though fully set forth here.

103.    Defendants have infringed Plaintiff's FLICKR mark in violation of Plaintiff's proprietary rights.    Such acts constitute unfair trade practices and unfair competition under the common law.

104.    Defendants' activities described above have at all times been willful and/or knowing.

105.    As a direct and proximate result of actions of Defendants described above, Plaintiff has been damaged and will continue to be damaged.

## **REQUEST FOR RELIEF**

Therefore, Plaintiff respectfully requests judgment as follows:

1.    That the Court enter a judgment that Defendants have:

    (a)    violated the rights of Plaintiff in Plaintiff's FLICKR mark in violation of 15 U.S.C. § 1125(d);

    (b)    infringed the rights of Plaintiff in Plaintiff's FLICKR mark in violation of 15 U.S.C. § 1114(1);

    (c)    violated the rights of Plaintiff in Plaintiff's FLICKR mark in violation of 15 U.S.C. § 1125(a);

    (d)    violated the rights of Plaintiff in the FLICKR mark in violation of 15 U.S.C. § 1125(c);

    (e)    violated the rights of Plaintiff in the FLICKR mark in violation of California Business & Professions Code § 14247;

    (f)    infringed the rights of Plaintiff in Plaintiff's FLICKR mark in violation of California Business and Professions Code § 17200;

    (g)    infringed the rights of Plaintiff in Plaintiff's FLICKR mark in violation of common law.

2.      That Defendants be ordered to transfer to Plaintiff the FLICKER.COM domain name and all other domain names they own or control that are identical or confusingly similar to Plaintiff's FLICKR mark;

3.      That Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with Defendants be preliminarily and permanently enjoined from the following activities:

      (a)      Registering, using, or trafficking in any manner, any domain name that incorporates, in whole or in part, Plaintiff's FLICKR mark, or any name, mark or designation confusingly similar thereto or dilutive thereof;

      (b)      Using Plaintiff's FLICKR mark, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether Defendants are affiliated or associated with or sponsored by Plaintiff or that is likely to dilute the FLICKR mark;

      (c)      Engaging in cybersquatting, trademark infringement, trademark dilution, unfair competition, false designation of origin, or passing off, against Plaintiff or misappropriation of Plaintiff's trademark rights; and

      (d)      Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 3(a) through 3(c) above;

4.      That Defendants be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiff, in an amount of One Hundred Thousand Dollars ($100,000) for the registration, trafficking in, and use of the FLICKER.COM domain name;

5.      That Defendants be ordered to account to Plaintiff for, and disgorge, all profits they have derived by reason of the unlawful acts complained of above, and an increasing of such profits under 15 U.S.C. § 1117 and all other applicable laws;

6.      That Defendants be ordered to pay Plaintiff's actual damages, and that those damages be trebled, under 15 U.S.C. § 1117 and all other applicable laws;

COMPLAINT

7.     That Defendants be ordered to pay Plaintiff's litigation expenses, including reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117 and under California Business and Professions Code § 17200, and under the California common law;

8.     That Defendants pay Plaintiff punitive damages under California common law;

9.     That Defendants be ordered to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon Defendants; and

10.    That Plaintiff be awarded such other relief as may be appropriate.

Dated:  July 31, 2009

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

By: _____
         Scott R. Mosko

Stanford Research Park
3300 Hillview Avenue
Palo Alto, California  94304-1203
Telephone:  (650) 849-6600
Facsimile:   (650) 849-6666

David M. Kelly (Of Counsel)
Stephanie H. Bald (Of Counsel)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 208-4400

Jonathan Matkowsky (Of Counsel)
jdm@yahoo-inc.com
Registered In-House Counsel
(California Bar Registration No. 800937)
Legal Director, Global Brand Protection
Yahoo! Inc.
701 First Avenue
Sunnyvale, California  94089
Telephone:  (408) 349-7317
Facsimile:   (408) 349-3400

Attorneys for Plaintiff
YAHOO! INC.

- 22 -                                                    COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to decide all issues so triable in this case.

Dated: July 31, 2009

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

By: _____
Scott R. Mosko

Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

David M. Kelly (Of Counsel)
Stephanie H. Bald (Of Counsel)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 208-4400

Jonathan Matkowsky (Of Counsel)
jdm@yahoo-inc.com
Registered In-House Counsel
(California Bar Registration No. 800937)
Legal Director, Global Brand Protection
Yahoo! Inc.
701 First Avenue
Sunnyvale, California 94089
Telephone: (408) 349-7317
Facsimile: (408) 349-3400

Attorneys for Plaintiff
YAHOO! INC.

COMPLAINT